NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0504n.06

No. 23-6050

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Dec 06, 2024
KELLY L. STEPHENS, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

WILSON CHAPMAN,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY

OPINION

Before: BATCHELDER, GRIFFIN, and WHITE, Circuit Judges.

HELENE N. WHITE, Circuit Judge. Defendant-Appellant Wilson Chapman appeals his sentence, arguing that he is not bound by the appeal waiver in his plea agreement. Because Chapman's appeal waiver is valid and enforceable, we AFFIRM.

## I. Facts

Defendant-Appellant Wilson Chapman pleaded guilty to two counts of wire fraud. In the plea agreement, Chapman admitted that he devised a scheme to fraudulently obtain nearly $200,000 from several investors. As part of that scheme, Chapman promised the investors that their money "was intended for deposit into . . . high-yield interest loans." R. 41, PID 102. But instead of "using the money as promised," Chapman used it to "pay his own personal expenses and [the] expense[s] of others." *Id.*

The plea agreement included an appeal-waiver provision. Under that provision, Chapman "knowingly and voluntarily waive[d] the right to directly appeal his conviction and the resulting sentence," except for appeals "based on claims of ineffective assistance of counsel or prosecutorial

misconduct." *Id.* at 107. In exchange, the Government promised to recommend a sentence "at the lowest end of the applicable Guideline Range"; to recommend against the "vulnerable victim" sentencing enhancement under U.S.S.G. § 3A1.1(b)(1); and to recommend a guideline reduction for Chapman's "acceptance of responsibility" under U.S.S.G. § 3E1.1. *Id.* at 106. The agreement also stated that the district court would "independently calculate the Guidelines at sentencing." *Id.* at 106–07. Beyond that, the Government promised to stipulate to a loss of $194,711 and to "recommend a fine at the lowest end of the applicable Guideline Range." *Id.* at 106.

The district court held two hearings: a plea hearing in August 2023, and a sentencing hearing in November 2023. At the plea hearing, the district court asked Chapman if he understood that he was "waiving the right to appeal," except for "appeal[s] based upon claims of ineffective assistance of counsel or prosecutorial misconduct." R. 74, PID 263. Chapman answered: "Yes, sir." *Id.*

At the sentencing hearing, Chapman presented arguments about several provisions of the sentencing guidelines that were not mentioned in the plea agreement. First, he argued that the district court should not apply the "abuse of trust" sentencing enhancement under U.S.S.G. § 3B1.3. R. 75, PID 277. The Government disagreed, and the district court sided with the Government. Second, Chapman argued that he was entitled to a guideline reduction as a "zero-point" offender under U.S.S.G. § 4C1.1. *Id.* at 279–80. The Government disagreed, and the district court once again sided with the Government. The district court determined the appropriate guideline range to be 27 to 33 months of imprisonment. As promised in the plea agreement, the Government recommended "the bottom of the guideline range." *Id.* at 301. The district court agreed and sentenced Chapman to 27 months' imprisonment.

This appeal followed.

## II. Analysis

Chapman argues that his sentence is procedurally and substantively unreasonable. Appellant's Brief at 18–25. But Chapman waived his right to directly appeal his sentence. If that waiver is "valid," we cannot review Chapman's sentence. *See, e.g.*, *United States v. Ferguson*, 669 F.3d 756, 764 (6th Cir. 2012). To evade the appeal waiver, Chapman raises two arguments. First, he argues his plea was not knowing and voluntary because the district court did not adequately explain the implications of the appeal-waiver provision. Second, he argues that the prosecutor breached the plea agreement at the sentencing hearing. Both arguments are unpersuasive.

### A. Knowing and Voluntary Plea Agreement

Chapman argues that he did not knowingly and voluntarily agree to the appeal waiver in his plea agreement because the district court did not properly "explain the implications of the waiver" at the plea hearing. Specifically, Chapman asserts that his plea colloquy violated Federal Rule of Criminal Procedure 11(b), under which a district court must "address the defendant personally in open court" and ensure that his "plea is voluntary." Because Chapman did not object to the plea colloquy, we review this argument for plain error. *United States v. Pitts*, 997 F.3d 688, 701 (6th Cir. 2021).

We have explained that Rule 11(b) requires the district court to "ascertain that the defendant understands the terms of the plea agreement." *United States v. Sharp*, 442 F.3d 946, 951 (6th Cir. 2006). When the plea agreement contains an appeal waiver, Rule 11 generally requires the district court to "ensur[e] that the appellate-waiver provision [i]s discussed in open court" and that the defendant understands it. *Id.* at 952. For instance, it is sufficient for a district court to advise the defendant that he is giving up "his appellate rights," "explain[] the exact

contours" of the waiver, and "check[] with" the defendant to make sure he understands the waiver "before moving on." *Pitts*, 997 F.3d at 702.

No plain error occurred here. At the plea hearing, the district court asked Chapman, "you understand as part of your plea agreement that you're waiving the right to appeal?" R. 74, PID 263. Chapman answered, "Yes, sir." *Id.* The district court continued, "[a]nd you understand there are two exceptions to that waiver, such that you will retain the right to appeal based upon claims of ineffective assistance of counsel or prosecutorial misconduct?" *Id.* Chapman again responded, "Yes, sir." *Id.* Simply put, the district court explained the appeal waiver and its exceptions and ensured that Chapman understood the rights he was forfeiting. That is all Rule 11 requires.

Chapman's contrary arguments are unpersuasive. Citing our unpublished opinion in *United States v. Cohen*, 515 F. App'x 405 (6th Cir. 2013), Chapman argues that Rule 11 was violated because the prosecutor "referenced that an appeal waiver existed but did not explain its terms." Appellant's Brief at 13. It is true that the prosecutor did not specifically explain the appeal waiver at the plea hearing; he stated only that the plea agreement "includes . . . appellate waivers." R. 74, PID 265.

But Chapman misunderstands a prosecutor's role in the Rule 11 inquiry. In *Cohen*, we held that when a district court fails to explain the appeal waiver to the defendant, a prosecutor may cure the error by providing that explanation in open court himself. *Cohen*, 515 F. App'x at 409. Where the district court is silent, "the prosecutor's failure to state or explain the full scope of the waiver counsels against enforcing the parts of the waiver not discussed in open court." *Id.* at 410. That is because the core purpose of Rule 11 is to ensure that a defendant understands the terms to which he agreed—if *neither* the court *nor* the prosecutor discusses the appeal waiver, the record does not "demonstrate that the waiver of the right to appeal the sentence was knowing and

voluntary." *Id.*; *see also Sharp*, 442 F.3d at 949–52 (finding no plain error where the district court did not ask the defendant about the appeal-waiver provision and instead "relied on the prosecutor to summarize" it).

Here, however, the district court *did* explain the appeal waiver, and it specifically ensured that Chapman understood what he was signing. That is just what Rule 11 contemplates. Chapman provides no authority for the proposition that Rule 11 requires *both* the court *and* the prosecutor to extensively discuss the same appeal waiver at the same hearing.

Nor is Chapman's reliance on *Sarlog v. United States*, 422 F. App'x 399 (6th Cir. 2011) (per curiam) well placed. In *Sarlog*, the district court "specifically told" the defendant that he retained the right to appeal certain issues, even though the appeal waiver contained no such exceptions. *Id.* at 403. We thus held that "as to those specific issues," the defendant "did not knowingly and voluntarily waive his appellate rights." *Id.* Nothing like that happened here.

Finally, Chapman asserts that the prosecutor "inserted confusion into the proceedings" at the sentencing hearing by raising objections and presenting evidence. Appellant's Brief at 14. Chapman does not concretely identify what the prosecutor said to cause this purported "confusion." In any case, the sentencing hearing occurred several months *after* the plea hearing at which Chapman agreed to waive his appellate rights. So it is unclear how anything that happened at the sentencing hearing could undermine Chapman's understanding of the appeal waiver he signed months earlier. All told, the record shows that Chapman "understood the effects of the appellate waiver." *Pitts*, 997 F.3d at 702. No plain error occurred.

## B. Breach of Plea Agreement

Second, Chapman argues that the Government breached the plea agreement. Ordinarily, we review breach-of-plea-agreement challenges de novo. *United States v. Warren*, 8 F.4th 444,

448 (6th Cir. 2021). But Chapman concedes that he failed to object below, so we review his argument for plain error. *See United States v. Barnes*, 278 F.3d 644, 646 (6th Cir. 2002). We interpret plea agreements under "traditional principles of contract law," and we "enforce them according to their literal terms." *Warren*, 8 F.4th at 448 (citation omitted). But "because defendants waive certain fundamental rights when they enter plea agreements," "we construe ambiguities against the government." *Id.* (cleaned up). In evaluating whether the Government has breached a plea agreement, we hold prosecutors to "meticulous standards of performance." *United States v. Moncivais*, 492 F.3d 652, 662 (6th Cir. 2007) (citation omitted).

Here, the Government entered a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(B). That rule permits the Government to "recommend, or agree not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply." Fed. R. Crim. P. 11(c)(1)(B). But the Government's recommendation "does not bind the court." *Id.* Thus, the district court is free to depart from both the guideline range in the presentence report and the guideline range the Government recommends. *United States v. Golson*, 95 F.4th 456, 462 n.4 (6th Cir. 2024); *United States v. Collins*, No. 23-6011, 2024 WL 3324692, at *2 (6th Cir. July 8, 2024) ("[T]he district court remained free to disagree with the government and calculate the Guidelines range differently.").

Here, the Government made three promises with respect to sentencing: (1) it would "recommend" a sentence "at the lowest end of the applicable Guideline Range, but not less than any mandatory minimum term of imprisonment required by law"; (2) it would "recommend" that the "vulnerable victim" sentencing enhancement under U.S.S.G. § 3A1.1(b)(1) not apply; and (3) it would "recommend" a three-level reduction for Chapman's "acceptance of responsibility"

6

under U.S.S.G. § 3E1.1. R. 41, PID 105–06. The Government kept all three promises, and Chapman does not argue otherwise.

Instead, Chapman focuses on this statement from the prosecutor at the plea hearing:

> This is a plea being entered pursuant to Rule 11(c)(1)(B), which means that the United States agrees to recommend or agrees not to oppose the defendant's request that a particular sentence or sentencing range is appropriate or that a certain provision of the sentencing guidelines or policy statement or sentencing factor does or does not apply.

R. 74, PID 264–65. Chapman argues that this statement meant that the Government had promised to refrain from "opposing the defendant's request for sentencing at a particular guideline range." Appellant's Brief at 18. Chapman concedes that this purported promise "was not specifically spelled out in the plea agreement," but he claims that it was "an inferable conclusion based on the totality of the circumstances." *Id.* at 17. In Chapman's view, the Government broke this supposed promise by opposing some of Chapman's arguments at the sentencing hearing.

As an initial matter, Chapman does not clearly identify which prosecutor statements he believes constitute a breach. To support his assertions, Chapman cites a single page toward the end of the sentencing hearing transcript. That page includes part of Chapman's allocution and the district court's explanation of the sentencing guidelines. It contains no statements by the prosecutor. However, earlier in the hearing, the prosecutor did oppose Chapman's arguments regarding the zero-point offender reduction under U.S.S.G. § 4C1.1 and the abuse-of-trust enhancement under U.S.S.G. § 3B1.3. Chapman may be referring to those statements.

Regardless, Chapman is wrong to argue that the Government promised to refrain from opposing any sentencing request Chapman might make. In full context, at the plea hearing, the prosecutor merely said that the plea was entered pursuant to Rule 11(c)(1)(B), and he then recited the text of that rule. A plea agreement under Rule 11(c)(1)(B) does not categorically bar the

7

Government from opposing the defendant's sentencing arguments. Rather, it permits the Government to enter into an agreement in which it promises to either "recommend" or "agree not to oppose" a "particular sentence." Fed. R. Crim. P. 11(c)(1)(B). Here, the Government acted under that rule to promise it would make several specific recommendations at sentencing. Chapman does not argue that the Government failed to make any of those recommendations. Instead, he takes the Government's recitation of Rule 11(c)(1)(B) out of context to suggest that the Government promised more than it did. We do not "hold the Government to promises it did *not* make." *Warren*, 8 F.4th at 450 (quoting *United States v. Danou*, 260 F. App'x 864, 868 (6th Cir. 2008)). Here, Chapman has failed to show that the Government breached any of the promises it actually made. No plain error occurred.

### III. Conclusion

For the foregoing reasons, we AFFIRM Chapman's sentence.